UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN CLEMENTS,<br><br>              Plaintiff<br><br>v.<br><br><br>HACHETTE BOOK GROUP, INC.,<br><br>              Defendant | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 12-12083<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
**AND DEMAND FOR TRIAL BY JURY**

This is an action for copyright infringement and for breach of contract relating to a copyrighted book written by the Plaintiff and published by the Defendant, or one or more of its predecessors, successors, assigns, subsidiaries, and/or principals.  The copyright claim is brought under the Copyright Act of the United States as amended, 17 U.S.C. §§ 101 et seq., to redress the infringement of the book.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §1338(a), and proper venue exists against the defendant under 28 U.S.C. §1400(a).  This Court has supplemental jurisdiction under 28 U.S.C. Section 1367(a), over all other claims including all claims for breach of contract.

1.	Plaintiff, ALAN CLEMENTS (hereinafter, "Clements"), is a citizen of the United States presently residing at 2768 West Broadway, Vancouver, British Columbia, V6K 2G4, Canada.  At all times material hereto, Clements has been a professional writer, journalist and public speaker specializing in the policies and politics of Burma, now known as Myanmar.

2.      Defendant, HACHETTE BOOK GROUP, INC., (hereinafter, "Hachette") is a corporation duly organized by law having a principal place of business at 237 Park Avenue, New York, New York 10017.  Hachette is registered to conduct business in the Commonwealth of Massachusetts.  Hachette is part of Hachette Livre, a wholly-owned subsidiary of Lagardère, a French company.  Lagardère owns or controls a French publishing company known as Éditions Stock.  All references to Hachette in this Complaint shall include Hachette and all of its predecessors, successors, assigns, subsidiaries, principals and all others acting for or on its behalf, including but not limited to Hachette Livre, Lagardère, and Éditions Stock.

3.      Clements is the author of a book entitled, *The Voice of Hope – Conversations with Alan Clements* (hereinafter referred to either as the "*The Voice of Hope*" or the "Work").  *The Voice of Hope* consists of a series of conversations with Burmese (Myanmar) Nobel Peace Laureate, Daw Aung San Suu Kyi ("Aung San Suu Kyi").

4.      The Work is registered with the U.S. Copyright Office under Registration Number TX-7-330-162.  Clements is the copyright claimant.  A copy of the Certificate of Registration issued by the Copyright Office is attached hereto as Exhibit A, and is incorporated into this Complaint by reference.

5.      Hachette (Éditions Stock) entered into a written agreement with Clements to publish *The Voice of Hope*.  A copy of the Memorandum of Agreement (the "Agreement") dated February 22, 1996, and copies of three Addenda to the Agreement (the "Addenda") dated April 16, 2008, July 23, 2008, and December 16, 2009, respectively, are attached hereto as Exhibit B, Exhibit C, Exhibit D, and Exhibit E, and are incorporated herein by reference.  The Agreement and the Addenda are hereinafter referred to collectively as the Agreement.  *The Voice of Hope* was published and distributed by Hachette starting in 1996.

6.      When *The Voice of Hope* was published, Aung San Suu Kyi was already one of the world's most prominent political prisoners, widely recognized for her work in fighting for human rights and democracy in Burma (Myanmar).  Aung San Suu Kyi was held under house arrest for many years by the government of Myanmar until her recent release in November 2010. She continues to fight for the rights of the oppressed in Myanmar and internationally, and received numerous accolades, awards, and other prizes, including the Rafto Prize, and the Sakharov Prize for Freedom of Thought in 1990, and the Nobel Peace Prize in 1991.  In 1992, Aung San Suu Kyi was awarded the Jawaharlal Nehru Award for International Understanding by the government of India, and the International Simón Bolívar Prize from the government of Venezuela.  In 2007, the Government of Canada made her an honorary citizen, one of only very few people ever to receive this honor.  In 2011, Aung San Suu Kyi was awarded the Wallenberg Medal, and in 2012, she was presented with the Congressional Gold Medal, which is, along with the Presidential Medal of Freedom, the highest civilian honor in the United States.  Aung San Suu Kyi continues to remain in the public eye both internationally as well as within her homeland of Myanmar.

Count I

7.      Clements realleges Paragraphs 1 through 6 of the Complaint as if said allegations had been restated and realleged herein in their entirety.

8.      Paragraph 6(g) of the Agreement (Exhibit B) provides that Hachette was to publish and distribute *The Voice of Hope*, to account for all sales of the Work every six (6) months, and to pay Clements a royalty based on sales within 90 days of each accounting.

9.      Hachette published *The Voice of Hope* under the Agreement but it has failed and neglected to account to Clements for "any and all sales of the Work in any form" every six (6) months, or to settle such accounts within ninety (90) days thereafter, as is required under Paragraph 6(g) of the Agreement (Exhibit B).

10.     As a result of Hachette's failure and refusal to account to Clements for sales of the Work and to pay to Clements his share of such royalties as are required under the terms of said Agreement, Clements has been damaged.

Count II

11.     Clements realleges Paragraphs 1 through 6 of the Complaint as if said allegations had been restated and realleged herein in their entirety.

12.     Paragraph 6(g) of the Agreement (Exhibit B) provides among other things, that Hachette was to publish and distribute *The Voice of Hope*, to account for all sales of the Work every six (6) months, and to pay Clements a royalty based on sales of the Work within 90 days of each accounting.

13.     Hachette published *The Voice of Hope* under the Agreement but it has failed and refused to account to Clements for "any and all sales of the Work in any form" every six (6) months, and to settle such accounts within ninety (90) days thereafter, as is required under the Agreement.  Hachette's failure and refusal to account to Clements and to pay royalties for sales of the Work is a default and is a material breach of the Agreement.

14.     Paragraph 9 of the Agreement between Hachette and Clements (Exhibit B) further provides in relevant part as follows:

> "In the event that the Publisher [Hachette] . . . has defaulted on any of the terms or conditions herein stated and has not rectified the same within thirty (30) days of receiving notice from the Author [Clements] . . . , then all Rights in the Work shall immediately, without prejudice and recourse, revert to the Author and the Interviewees."

Clements gave notice of default to Hachette on several occasions, and Hachette has failed and refused to cure said default within thirty (30) days of receiving notice, and Hachette has failed and refused to formally relinquish all of its rights to the Work.

15.    As a result, Clements has been damaged because he has been unable to promote or exploit *The Voice of Hope* and he has lost considerable revenues from sales of the Work that would have resulted from his promotion of the Work at times when Aung San Suu Kyi's continued notoriety on the international stage was most in the news.  Clements has been further damaged because Hachette has failed to account to Clements for all revenues it earned from sales of the Work within thirty (30) days after receiving notice of default without curing said default. In addition, Clements has been damaged because he was unable to publish and distribute updated, enhanced, and/or enlarged editions of *The Voice of Hope* and he has lost considerable revenues from sales of new versions of the Work.

### Count III

16.    Clements realleges Paragraphs 1 through 10 of the Complaint as if said allegations had been restated and realleged herein in their entirety.

17.    While the Agreement provides that Hachette can publish *The Voice of Hope* in various forms and formats, it does not permit Hachette to publish the Work as an electronic or E-book (hereinafter, "E-book").

18.    Hachette has breached the Agreement by publishing and authorizing others to publish *The Voice of Hope* as an E-book, by failing and refusing to account to Clements for sales of the E-book version of the Work, and by failing and refusing to pay Clements royalties for said sales, as a result of which Clements has been damaged.

Count IV

19.     Clements realleges Paragraphs 1 through 10 of the Complaint as if said allegations had been restated and realleged herein in their entirety.

20.     While the Agreement provides that Hachette can publish *The Voice of Hope* in various forms and formats, it does not permit Hachette to publish or authorize others to publish the Work as an electronic or E-book (hereinafter, "E-book").

21.     Hachette and others acting under the authority of Hachette, have published and distributed an E-book version of *The Voice of Hope* without Clements' permission or authority, in violation of the Agreement, and in violation of Clements' rights under the U.S. Copyright Act, Title 17 U.S. Code Section 101 *et seq*.

22.     As a result of the actions of Hachette, Clements' copyright to the Work has been infringed for which Clements is entitled to his actual damages including but not limited to royalties from the sales of all E-book editions of the Work, plus all profits earned by Hachette and others acting under the authority of Hachette from sales of the E-book version of *The Voice of Hope*.

Count V

23.     Clements realleges Paragraphs 1 through 6 of the Complaint as if said allegations had been restated and realleged herein in their entirety.

24.     Hachette published *The Voice of Hope* under the Agreement but it has failed, refused and/or neglected to fully and adequately promote and/or exploit *The Voice of Hope* as required by the terms of the Agreement.

25.     As a result of Hachette's failure, refusal and/or neglect to fully and adequately promote and/or exploit *The Voice of Hope* as required by the terms of the Agreement, Clements

has been damaged in that he has lost considerable revenues from sales of the Work that would

have resulted from the promotion of *The Voice of Hope* particularly at times when Aung San Suu

Kyi's continued notoriety on the international stage was most in the news.

Count VI

26.     Clements realleges Paragraphs 1 through 6 of the Complaint as if said allegations

had been restated and realleged herein in their entirety.

27.     Hachette published *The Voice of Hope* under the Agreement but it has failed,

refused and/or neglected to fully and adequately promote and/or exploit *The Voice of Hope* as

required by the terms of the Agreement, and it has failed, refused and/or neglected to take

advantage of the extraordinary continuing accomplishments of Aung San Suu Kyi and her

notoriety and her recognition on the international stage and through her numerous prizes, awards

and accolades.

28.     As a result of Hachette's neglect and failure to fully and adequately exploit *The

Voice of Hope* and to take advantage of Aung San Suu Kyi's considerable accomplishments after

the Work was published, Clements' career as a professional writer, journalist, Burma expert and

public speaker has been greatly damaged, and he has been further damaged because he was

unable to publish and distribute updated, enhanced, and/or enlarged editions of *The Voice of

Hope* and he has lost considerable revenues from sales of new versions of the Work.

Count VII

29.     Clements realleges Paragraphs 1 through 6 of the Complaint as if said allegations

had been restated and realleged herein in their entirety.

30.     After Hachette published *The Voice of Hope* under the Agreement, it informed

Clements that it was willing to relinquish all of its rights to continue to publish the Work.

However, Hachette has breached its agreement with Clements and has failed and refused to formally relinquish all of its rights to the Work and it has failed to account to Clements for all revenues it earned from sales of the Work before agreeing to relinquish its rights, and for failing to pay to Clements all revenues earned from the Work after it agreed to relinquish its rights.

31.     As a result, Clements has been damaged in that he has lost considerable revenue from sales of the Work by Hachette, and has been unable to promote and/or exploit *The Voice of Hope* and he has lost considerable revenues from sales of the Work that would have resulted from his promotion and/or exploitation of *The Voice of Hope* at times when Aung San Suu Kyi's continued notoriety on the international stage was most in the news.

WHEREFORE, Plaintiff, Alan Clements demands judgment against Defendant, Hachette Book Group, Inc. and all of its predecessors, successors, assigns, subsidiaries, principals and all others acting for or on its behalf, including but not limited to Hachette Livre, Lagardère, and Éditions Stock (collectively, "Hachette"), as follows:

a)     That Hachette be required to destroy all copies of *The Voice of Hope* in all electronic forms including E-books, which are in Hachette's possession or under its control;

b)     That Hachette be required to pay Clements such actual damages as Clements has sustained in consequence of Hachette's infringement of Clements' copyright to the Work by publishing and distributing an electronic version of *The Voice of Hope*, without permission or authority, and to account for all gains, profits and advantages derived by Hachette from its use and infringement of the Work;

c)     In lieu of Clements' actual damages and Hachette's profits, that Hachette be required to pay to Clements such Statutory Damages as to the Court shall appear just

within the provisions of the Copyright Act in a sum not less than $750 nor more than

$30,000, or if the Court finds that the infringement was committed willfully, such

statutory damages as to the Court shall appear just within the provisions of the Copyright

Act in a sum up to and including $150,000;

d)        That Hachette account to Clements for all sales of *The Voice of Hope* in all of its

formats including print, audio and electronic editions;

e)        That Hachette pay damages consisting of royalties for sales of *The Voice of Hope*

in all of its formats;

f)        That Clements be awarded damages against Hachette for Hachette's failure and

neglect to fully and properly promote *The Voice of Hope* as required by the terms of the

Agreement;

g)        That Clements be awarded damages against Hachette for Hachette's failure and

neglect to fully and adequately exploit *The Voice of Hope* as required by the terms of the

Agreement;

h)        That Hachette be ordered to pay damages to Clements for the damage it caused to

Clements' career as a professional writer, journalist, Burma expert and public speaker.

i)        That Hachette be ordered to pay damages to Clements for Hachette's failure and

refusal to relinquish all of its rights to the Work in writing, thereby preventing Clements

from publishing and distributing updated, enhanced, and/or enlarged editions of *The*

*Voice of Hope* resulting in the loss of considerable revenues from sales of new versions

of the Work.

j)        That Hachette be ordered to relinquish to Clements all of Hachette's rights to

continue to publish and distribute the Work in any form whatsoever.

k)      That Hachette pay Clements interest, together with his costs and reasonable

attorney's fees in an amount to be determined by this Court;

l)      That Clements have such other and further relief as is deemed to be just and

proper.

**PLAINTIFF CLAIMS TRIAL BY JURY**


                                    Alan Clements,
                                    By his attorney,
                                    */s Andrew D. Epstein*
November 8, 2012                    _____
                                    Andrew D. Epstein, Esquire
                                    BBO #155-140
                                    Barker, Epstein & Loscocco
                                    Boston, Massachusetts 02110
                                    (617) 482-4900
                                    Fax: (617) 426-5251
                                    Photolaw@aol.com